Curia, per

Dunkin, Ch.
The Court are satisfied with the decree pronounced in January, 1840, and, in that respect, it might only be necessary to dismiss the appeal.
*211 But the defendant has also appealed from so much of the decree of January, 1839, as overruled the plea of the Statute of Limitations. This plea was interposed, in bar, to the entire demand of the petitioner. Without enquiring whether the relation between the petitioner, (Hanks,) and the intestate, was of a fiduciary character, or whether it was a case of mutual accounts, within the statute, it may safely be assumed that, on the death of Durant, the fiduciary relation was determined, and the mutual accounts ceased. Durant died on 31st January, 1831. On 31st October, 1835, four years and nine months would have elapsed, and the statutory bar would be complete.
But, it is said that, on the 15th September, L835, six weeks before the statute had run out, the petitioner, Hanks, filed his answer to a bill preferred in this Court by the administrators of Durant, and, on the reference, set up the account which is now demanded. The bill was subsequently dismissed, by the complainants, and this petition then filed. It is insisted that the answer suspended the operation of the statute.
Perhaps it might be sufficient to say that a party, insisting on an exception to the statute, ought to maintain his position by the terms of the law, by authority, or on some principle clearly analogous to the decided cases. No authority was adduced to the Court; nor would any such be probably found in the English books. According to the practice of the English Chancery, a complainant is not at liberty to dismiss his bill, but by leave of the Court; and that would not be granted where it would operate a manifest injustice to the defendant. Since the case of Bethea vs. McKay, decided at the late sittings in Charleston, (Supra, p. 93,) such would be probably the rule here. But it is a settled principle in England that “if the subject matter of the suit be of legal jurisdiction, the bringing of a suit in Equity will not bar the operation of the sta-r tute.” Lord Loughborough, in Pinche vs. Thornycrofte, (1 *212 Bro. Ch. R. 291,) says, “ it was their own judgment that decided upon it. A legal' bar has taken place in consequence of a legal provision; — whether that provision be wise or not, it must bar.” The same principle had been recognized in Pierce vs. Bellamy, cited in Eilbert vs. Emerson, (2 Vern. 503,) where the Lord Keeper refused to direct that the Statute of Limitations should not be given in evidence. It does not appear that, in the case under consideration, any opposition was •made to the dismissal of the complainant’s bill; but, if it had been ineffectually made, the petitioner would be in no worse situation than a defendant at law, who has filed a discount, and whose demand may be barred by the statute, if the plain-¡tiff discontinue his suit. In some cases, it may work great Jiardship; but this may always be prevented by a cross suit, As is said in the case cited, the party acts on his own judgment, and ought not to complain, if the Court declines to en-graft a new exception on the Statute of Limitations. In the judgment of the Court, the plea should have been allowed; and for myself, I would add, in the language of Judge Nott, in Vincent vs. Van Rhyn, “ I have seen but few cases where it appeared to me that the party was better entitled to such a 'shield.”
Moses, for the petitioner.
DeSaussure Garden? contra.
It is ordered and decreed that the petition be dismissed.
Harper, Johnst.qn, and Johnson, Ch., concurred.
*213 0?3 This case was decided at May Term, 1839, but was accidentally omitted in the publication of the cases of that term.